UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No: 13-03-GFVT |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| DELBERT COUCH, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

When Officers searched the home of Delbert Couch they found marijuana, evidence of marijuana production, a scale, and three coffee cans which contained $80,120 in cash. Couch's wallet contained another $954. The Government argues that the cash is subject to criminal forfeiture. Couch objects on two grounds. First, he argues that the seized money was not tied to the criminal enterprise and should not be forfeited. Second, he argues that the forfeiture the Government seeks is excessive and violates the Eighth Amendment's prohibition against excessive fines.

**I**

On December 18, 2013, Couch plead guilty to manufacturing less than 50 marijuana plants in violation of 21 U.S.C. § 841(a)(I), and to possession of firearms by an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3). [R. 51.] Couch also plead guilty to a portion of the criminal forfeiture allegation, but did not agree to forfeit the $81,074.00 of U.S. currency seized from his residence. [*Id.*]

In his plea agreement, Couch admitted to the following facts regarding his criminal conduct. On or about July 6, 2012, a "spotter" working with the Marijuana Eradication Task Force (ERAD) observed a marijuana plant in a wooded area near Couch's property. Law enforcement confirmed the plant they spotted was marijuana, and proceeded to the door of the residence located closest to the marijuana plot to conduct a "knock and talk." Couch answered the door. The Trooper noticed a strong odor of marijuana emanating from inside Couch's residence, and further noticed that Couch appeared to be nervous. The Trooper asked for consent to search the property, but Couch refused. Based on the aforementioned information, Officers obtained a search warrant for Couch's residence and property. While waiting for the warrant, Couch admitted to being a user of marijuana. Upon execution of the warrant, the ERAD team eradicated several marijuana plants from in and around the property. The ERAD team also seized several baggies of processed marijuana; various types of marijuana seeds; growing materials, a triple-beam scale; plastic baggies; numerous firearms and ammunition; and approximately $81,074.00 in cash. In addition to searching Couch's residence, the ERAD team searched two abandoned trailers on Couch's property, one of which contained materials consistent with the drying and processing of marijuana. Couch admits that he manufactured four of the marijuana plants. [R. 51.]

Couch's plea agreement specifically reserved the issue of whether the seized cash was subject to forfeiture for a later hearing before the Court. [*Id.*] On May 15, 2014, the Court sentenced Couch to four years of probation on each count, to run concurrently, for a total of 4 years. [R. 54.] The Court further imposed $1,500.00 in community

restitution. [*Id*.] Finally, the Court set a forfeiture hearing regarding the $81,074. [R. 53, 54.] At that hearing, the Government presented evidence from three witnesses.

The first witness, U.S. Forest Service Special Agent Bill Laing, obtained the search warrant and executed the search that revealed both the Marijuana and the currency. [Tr. 12.] Most notably, Laing discovered the three coffee cans containing bundles of U.S. currency that are presently at issue. [Tr. 16-17; Government Exhibit A.] After detailing the search, Laing posited that Defendant Couch was cultivating marijuana for sale rather than growing it for personal use. [Tr. 26.] According to Laing, there were "19 marijuana plants discovered during the execution of that search warrant. But, the – evidence that we were seeing, there was a larger scale operation going on, you know, in the area." [R. 24.] He based his opinion on the number of plants, the number of marijuana seeds, the various types of containers, and the fact that Couch had scales for weighing the marijuana. [Tr. 32-33.]

The second witness, Kentucky State Police Trooper Michelle Lunsford, also participated in the search of Couch's home. [Tr. 34.] Lunsford was responsible for counting the money recovered, and then taking it into State Police custody. [Tr. 36.] Lunsford testified that the money was bundled in a way suggestive of drug trafficking and also that the money appeared to be "fairly new," suggesting that it had not been stored in the coffee cans for a long period of time. [Tr. 37.]

The third witness, Mr. Frank Antos, is also a Special Agent with the U.S. Forest Service. He came to Couch's residence after the search occurred, counted up the money and prepared a summary of the money in each can. [Tr. 44.] Antos detailed the contents of all three coffee cans. Coffee can #1 contained ten bundles of cash, totaling $33,920.

[Tr. 45.] The cash was broken down in the following way: six bundles of $2,000, one bundle of $1,920, one envelope containing $5,000 and a receipt from Appalachian Wireless, one Cumberland Valley Bank envelope containing $10,000, and another Cumberland Valley Bank envelope containing $5,000. [Tr. 45-46.] Coffee can #2 contained thirteen bundles of cash, totaling $24,200, broken down in the following ways: eleven bundles of $2,000, one bundle of $700, and one bundle of $1,500. [Tr. 46.] Coffee can #3 contained $22,000 and was broken down into eleven bundles of $2,000. [Tr. 46.] Couch's wallet contained $954. [*Id.*] In total, Antos explained "[t]here were a total of 34 bundles, 28 of which contained exactly $2,000 through bundles that were associated with a bank and/or Appalachian Wireless, and then there were three bundles that had other than $2,700, 1,500 and 1,920." [*Id.*]

According to Antos, money wrapped in $2,000 bundles is consistent with drug trafficking. [Tr. 46.] Interestingly, Antos also did a little background research on the coffee cans and discovered that they were relatively new, having been produced within eighteen months of July 2011 and 2012, respectively. [Tr. 47.] It was Antos' opinion that the quantity of marijuana seized from Couch's home was in excess of what would be consumed for personal use. [Tr. 48.]

Couch did not call any witnesses but did tender a number of exhibits which he believes demonstrate that the money found was earned through legitimate means. Couch presented a $20,000 receipt from Appalachian Wireless, dated July 8, 2011, which was located in coffee can #1. [Tr. 49; Defendant's Exhibit 1.] Couch also presented a series of logging receipts from Begley lumber from February 2006 through August 2006. [Defendant's Exhibit 2.] According to the Defendant, these receipts are not offered to

4

account for the entire amount of money seized, but to demonstrate that Couch did have legitimate income. [Tr. 61.] Couch also presented a series of Cumberland Valley Bank deposit slips, showing total deposits of $38,000. [Defendant's Exhibit 3.] Couch presents a July 2007 withdrawal slip, which shows that Couch withdrew $27,650 from his savings account at Cumberland Valley National Bank. [Defendant's Exhibit 4.] Finally, Couch presents copies of deeds, dated between 1990 and 2006, which show that he made in excess of $49,000 during that time.[1] [Defendant's Exhibit 5.]

## II

### A

When the Government seeks forfeiture of property in a criminal proceeding, Federal Rule of Criminal Procedure 32.2 provides that "the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(a)(1)(A); *United States v. Jones*, 502 F.3d 388, 391-92 (6th Cir. 2007). Such property subject to forfeiture includes "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation" or "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." 21 U.S.C. § 853. "The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2 (b)(1)(B). The Government must prove that a sufficient nexus existed

---

[1] The Court notes that Defense Counsel represented the total value of those deeds amounted to $49,000. The Court has reviewed the exhibit and concludes that they actually are valued at $53,000. As none of the deeds sufficiently rebut the Government's proof that the money found in Couch's home was tied to his drug sales, this discrepancy is ultimately inconsequential.

5

between the property intended to be seized and the offense "by a preponderance of the evidence." *Jones,* 502 F.3d at 392 (*citing United States v. Hall*, 411 F.3d 651, 654-55 (6th Cir. 2005)).

**B**

The Government has presented evidence sufficient to establish the "requisite nexus" between much of the cash seized and Couch's offense. A number of facts support this conclusion. First, the money was concealed in coffee cans at the bottom of a trash can. Couch was familiar with the banking system; Defendant's own exhibits show he had previously, actively used bank accounts. Second, the money was rolled into $2,000 bundles. As the agent testified, this is the way that money is often stored when being used for drug trafficking. Third, other items found in the house support the Government's contention that Mr. Couch was selling marijuana. The volume and variety of marijuana seeds, and the type of scale recovered all point to distribution. As noted by Officer Laing, a person would not use a scale that measures such large quantities of marijuana if it is only being personally consumed. Fourth, the quantity of marijuana found on and about the premises also supports the conclusion that Couch was selling. According to the testimony of Special Agent Antos, a person would have to smoke "a joint every hour of every day [ ] for a year" to consume the quantity of marijuana grown at Couch's residence. Based on Antos math, and the assumption that Mr. Couch does periodically sleep, he would have to smoke multiple marijuana cigarettes every hour that he is awake to consume all that he grows. Couch argues that he is just a "pot head" but the consumption of this much marijuana, even by a heavy marijuana user, is simply unbelievable.

While Couch has presented multiple pieces of information demonstrating that he had income, Couch has failed to produce evidence that the income he received in the past is the same as the large amounts of cash at his residence. With that said, the Court is not convinced that *all* of the money recovered at Couch's home is connected to that conduct. While the Government argued that the entirety of the $81,074 was connected to the offense, they did concede that "there is some alternative explanation for $20,954" seized from two separate envelopes and from Couch's wallet. [*Tr.* at 57.] After having reviewed the evidence, the Court finds that Couch's non-criminal explanations accounting for this nearly $21,000 are convincing.

Despite being found inside coffee can #1, the $20,000 contained in envelopes appear unrelated to the illegal conduct. The Appalachian Wireless envelope contained both $5,000 cash and a $20,000 receipt from Appalachian Wireless. [Tr. 49, Defendant's Exhibit 1.] The first Cumberland Valley Envelope contained $10,000 in cash. The second Cumberland Valley Envelope contained $5,000 in cash.

For a number of reasons, this money is distinguishable from the other money found in the coffee cans. First, the money was accompanied by envelopes which suggested its source. Couch also produced records demonstrating that he did bank with Cumberland Valley. [Defendant's Exhibits 3 & 4.] Despite the fact that the banking transactions took place five years before the criminal conduct, the Court has no evidence which suggests the money found in those envelopes was anything other than proceeds from those legitimate transactions. Second, unlike the remainder of the money found in the coffee can, this cash was not bundled into $2,000 rolls. [*See* Govt. Exhibit C.]

There is also insufficient evidence in the record to tie the money seized from Couch's wallet to the criminal activity. With the evidence before the Court, it is as likely that he received that money from trading coins or knives, as from selling marijuana. [*See* Tr. 62.]

## C

Couch also argues that amount seized as forfeiture is excessive, in violation of the Eighth Amendment's provision that "excessive fines [shall not be] imposed." U.S. Const. Am. VIII. This was the subject of *United States v. Bajakajian*, wherein the Supreme Court held that a punitive forfeiture violates the excessive fines clause when it is "grossly disproportional to the gravity of [the] defendant's offense." 524 U.S. 321, 334 (1998). In that case, the Defendant had pled guilty to failing to report that he was leaving the United States with $357,144 in currency. *Id*. at 321. The district court found that the full amount was subject to forfeiture but declined to order that it all be forfeited, finding that such forfeiture would be "grossly disproportional to the offense in question" and in violation of the Excessive Fines Clause of the Eighth Amendment. *Id*. The Supreme Court agreed, pointing out that "[h]ad the crime gone undetected, the Government would have been deprived only of the information that $357,144 had left the country." *Id*. at 339. Bearing this fact in mind, the Court concluded the Government's request that the defendant forfeit the entire $357,144 was "grossly disproportional to the gravity of [the] offense" and violated the Eight Amendment's Excessive Fines Clause. *Id*.

While *Bajakajian* does require the Court to consider whether a punitive forfeiture is grossly disproportional to the offense, "the Eighth Amendment has no application to forfeiture of property acquired with drug proceeds." *United States v. Betancourt*, 422

F.3d 240, 250-251 (5th Cir. 2005) (citing *United States v. Buchanan*, 70 F.3d 818, 830 n. 12 (5th Cir.1995)).  The Statute governing criminal forfeitures makes the forfeiture of drug proceeds mandatory.  *See* 21 U.S.C. § 853 (Any person convicted of a drug offense "punishable by imprisonment for more than one year shall forfeit to the United States. . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation.")  As further noted by the Fifth Circuit in Betancourt:

> Other Courts of Appeals have similarly held that in such instances the Eighth Amendment does not apply. *See, e.g., United States v. Alexander,* 32 F.3d 1231, 1236 (8th Cir.1994) ("Forfeiture of proceeds cannot be considered punishment, and thus, subject to the excessive fines clause, as it simply parts the owner from the fruits of the criminal activity."); *United States v. Real Prop. Located at 22 Santa Barbara Drive,* 264 F.3d 860, 875 (9th Cir.2001) (holding that "the excessive fines clause of the Eighth Amendment does not apply to a forfeiture action brought under 21 U.S.C. § 881(a)(6)," *251 which governs forfeiture of funds connected with drug trafficking); *United States v. Lot 41, Berryhill Farm Estates,* 128 F.3d 1386, 1395–96 (10th Cir.1997) (holding that forfeiture of drug proceeds pursuant to § 881(a)(6) "can never be constitutionally excessive").

*Betancourt*, 422 F.3d at 250-51; *contra United States v. Jalaram*, Inc., 599 F.3d 347, 355 FN 7 (4th Cir. 2010) (Criticizing *Betancourt* and asserting that there is no distinction between criminal forfeitures involving drug proceeds and those that do not.)

The Sixth Circuit has not issued an opinion that addresses the issue as pointedly as did the Fifth Circuit in *Betancourt.*  There are good reasons, however, to believe that 21 U.S.C. § 853 is remedial, rather than punitive, taking it outside the scope of *Bajakajian*.  Most notably, the statute refers to its remedial purpose.  *See* 21 U.S.C. § 853 (o) ("The provisions of this section shall be liberally construed to effectuate its remedial purposes.")  Furthermore, the Sixth Circuit has commented on the statutes' remedial purposes.  *See U.S. v. Darji*, 2015 WL 3372729, (6th Cir. 2015) ("We must construe § 853 liberally in order to effectuate its remedial purpose.") (quoting 21 U.S.C. § 853(o));

9

*United States v. Salinas*, 65 F.3d 551, 554 (6th Cir. 1995) ("Not only are drug proceeds inherently proportional to the damages caused by the illegal activity, as stated above, but also one never acquires a property right to proceeds, which include not only cash but also property secured with the proceeds of illegal activity. We therefore adopt the view [ ] that forfeiture of drug proceeds is not punishment, but is remedial in nature."); *United States v. Hronek*, No. 5:02-CR-142, 2003 WL 23374653, at *2 (N.D. Ohio Aug. 4, 2003) ("[F]orfeiture of drug proceeds is not a punishment but is remedial in nature and, therefore, is never considered excessive."). *But see U.S. v. Carpenter,* 317 F.3d 618 (6th Cir. 2003), *reinstated in part on reh'g en banc by* 360 F.3d 591 (6th Cir. 2004) (After concluding that forfeiture of entire 100 acre farm was mandatory under 21 U.S.C. 853 since a portion of that farm had been used to manufacture marijuana, the Court referred to forfeiture as "punitive" and proceeded to consider whether such forfeiture violated the Excessive Fines Clause.)

As the Supreme Court's holding in *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) only applies to excessive *punitive* forfeitures, it is of no import here. This conclusion is supported by both the aforementioned case law and common sense. To reduce Couch's forfeiture amount, after this Court has concluded that it is connected to the offense of conviction, would be to permit Couch to retain the fruits of his illegal behaviors. This cannot be what the Supreme Court had in mind in *Bajakajian*.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that the $20,954 seized from the three envelopes and from Couch's wallet be returned to him. However, because the Government has demonstrated, by a preponderance of the

evidence, the requisite nexus between the remaining $60,120 and his criminal activity, this money shall be forfeited as proceeds of that illegal activity. *See* 21 U.S.C. § 853. Furthermore, because forfeiture under 21 U.S.C. § 853 is *remedial*, rather than *punitive*, *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) does not apply and the amount forfeited cannot offend the Eighth Amendment's excessive fines clause.

This 10th day of September, 2015.



Signed By:
Gregory F. Van Tatenhove
United States District Judge